[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter came before the Court pursuant to a Support Petition filed by the State of Connecticut to recover support for the minor child, Michael James Raguso-Gorman (d.o.b. 8/17/82). The Support Petition requests, inter alia, that this court establish an arrearage, and payment thereon, for past due support owed by the respondent to the petitioner from the date of the parties New York dissolution judgment, August 29, 1983, until October 8, 1997, the date the minor child was placed in the care of Connecticut's Department of Child and Family.
The issue of financial support for Michael is a relatively recent issue between the parties. The issue of paternity for Michael has had a long, tortuous and, obviously, destructive and disgraceful history.
The parties to this action were married on February 27, 1982. The minor child, Michael, was born on August 17, 1982. The respondent testified that the parties separated in April, 1982. The respondent testified (also see Ex. 7) that, as a result of conversations that he had with the petitioner during their brief marriage, he came to suspect that he was not Michael's father. The marriage of the parties was dissolved by the New York courts on August 29, 1983. That court found that Michael was issue of the marriage. That court declined to order child support, citing, inter alia, petitioner's refusal to participate in genetic testing with CT Page 2938-ag the child and citing a support action in a separate division of the New York court system. Said separate action was subsequently withdrawn by the parties pursuant to the terms of a Stipulation signed by the parties on June 8, 1983.
Respondent cites sporadic attempts on his part to resolve the issues of genetic testing and paternity in 1984 (see Ex. 2, 3 and 4). The court notes that the parties were both employed by IBM and worked closely together for a period. The whereabouts of each party and the minor child were known to the other party at all times. The petitioner repeatedly refused to submit herself and the minor child to genetic testing. The respondent had no meaningful relationship with the minor child. The respondent testified (also see Ex. 7) that petitioner maintained that any relationship between respondent and the minor child was a "package deal", i.e., marriage between respondent and petitioner on the one hand or no relationship at all between respondent and the minor child, on the other.
Things quieted down between the parties for a few years. Then, in 1988, petitioner remarried. At this point, petitioner requested that respondent terminate his parental rights to Michael. Respondent was indignant and again renewed his demands for genetic testing. Petitioner again refused said testing. While this action was pending, petitioner made her first formal demand for child support (see Ex. 5). The petition for termination of respondent's parental rights was eventually dismissed for failure to prosecute.
In October, 1990 respondent filed in the Danbury Superior Court a Motion for Judgment of Paternity and Visitation Rights. While this matter was pending, the parties and the minor child finally submitted to genetic testing. On August 27, 1991, the Hartford Hospital test laboratory reported a 99.6% likelihood of paternity. Respondent's action in Danbury Superior Court was withdrawn at approximately the same time as the dismissal of petitioner's termination of parental rights. Once again, nothing was resolved except that, at this point, respondent knew that he was in fact the biological as well as legal father of Michael.
Again, things quieted down between the parties for several years. No child support was demanded nor paid.
In early 1998, a Neglect proceeding concerning Michael was commenced in the Danbury Juvenile Court. As part of that action, the respondent was notified that the State would be seeking contribution toward and reimbursement from him for the cost of the child's commitment. Respondent CT Page 2938-ah appeared in that action and interposed the defense of non-paternity. The Court (Dennis, J) denied respondent's motion that the action against him be dismissed. The minor child was returned to the petitioner's care a few months thereafter.
On October 28, 1998, the parties and their counsel appeared in this court and presented an agreement for current support in the amount of $110 weekly in accordance with the guidelines. Said figure was arrived at after giving the respondent credit for payment of child support for his three other children by two different women. The only issue that remains is the amount of arrearage owed by the respondent to the petitioner, if any.
Petitioner demands child support retroactive to August 29, 1983, the date of the dissolution. The Assistant Attorney General argues persuasively that, inter alia, petitioner is entitled to claim same under C.G.S 46b-215; that there is no prior order for the support of this minor child under the New York judgment; that the parties' tacit agreement, acts, or failure to act cannot affect the minor child's absolute right to financial support from both of his parents.
Respondent demands that this court enter an order for current support only. His counsel argues somewhat persuasively that to enter an arrearage finding would be a retroactive modification of child support; that the failure of respondent to pay child support was the result of petitioner's decision to deny the respondent any relationship or involvement in his son's life; that no demand for child support was ever made except for a "threatening" letter sent in 1992 as part of the termination of parental rights proceeding; that the petitioner's refusal to submit to genetic testing prevented him from seeking and establishing a parent/child relationship with the child; that now, after 16 1/2 years, petitioner wants to "go back" on their agreement and demand child support for that period while he is unable to "go back" and establish 16 1/2 years of a parent relationship with his child; that laches applies to the petitioner's request for retroactive child support.
The court finds that there is no prior court order for the payment of child support. The court finds that this support petition brought pursuant to C.G.S. 46b-215 is an appropriate vehicle to establish a current support and an arrearage order. The court finds that to do same would not violate the prohibition against retroactive modifications of child support. The court finds that it is not bound by any agreement of the parties or by their actions or failure to act through the years. These parties have very obviously not acted in the best interest of this CT Page 2938-ai child and same has just as obviously resulted in detriment to this child. This court also finds that respondent may well have had legitimate doubts as to the paternity of the child. However, those doubts were resolved on August 27, 1991 with the results of genetic testing. As of that date, respondent knew he was the biological father of Michael and of his privilege and duty to support Michael. Although legally the petitioner is entitled to request support retroactive to August, 1983, the principle of laches and the findings of the New York court that no child support be ordered due to petitioner's refusal to submit to genetic testing, must control.
Therefore, the State is ordered to calculate the arrearage for past due support owed to the petitioner by the respondent retroactive to August 27, 1991. The State is ordered to give respondent credit for support paid during that period to his other three minor children. Once that calculation is complete, the court will enter an order for repayment of same.
THE COURT
Susan S. Reynolds Family Support Magistrate
CT Page 2939